UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

NEIL E. TIERNEY,                                    )
                                                   )
          Plaintiff,                               )
                                                   )
          v.                                        )     Civil Action No. 17-30125- MGM
                                                   )
JOHN GAUDRAULT, MICHAEL R. SOBON,                  )
O'CONNELL OIL ASSOCIATES, INC,                     )
GLOBAL MONTELLO GROUP CORP,                        )
and LPJ DONUTS, INC.,                              )
                                                   )
          Defendants.                              )


REPORT AND RECOMMENDATION REGARDING MOTION OF DEFENDANTS, JOHN
GAUDRAULT, MICHAEL R. SOBON, O'CONNELL OIL ASSOCIATES, INC., AND
GLOBAL MONTELLO GROUP CORP. TO DISMISS AND PLAINTIFF'S MOTIONS FOR
JUDGMENT ON THE PLEADINGS AND FOR INJUNCTIVE RELIEF
(Dkt. Nos. 15, 21, 26)

ROBERTSON, U.S.M.J.

> I.      INTRODUCTION

Plaintiff Neil Tierney ("Plaintiff"), appearing pro se, filed suit against John Gaudrault

(Gaudrault), Michael R. Sobon (Sobon), O'Connell Oil Associates, Inc., and Global Montello

Group Corp. (collectively, "Defendants"), as well as against LPJ Donuts, Inc., alleging

jurisdiction under the Petroleum Marketing Practices Act (PMPA), 15 U.S.C. §§ 2801-2805.

Plaintiff operated a convenience store and gas station at premises owned by some or all of the

defendants.  The four-paragraph complaint alleges claims related to Plaintiff's loss of his

franchise and a related loss of income from a Dunkin Donuts that operated in the convenience

store.  On January 26, 2018, Defendants filed a motion seeking dismissal of Plaintiff's case

based, in part, on the statute of limitations (Dkt. No. 15).  On February 23, 2018, Plaintiff filed a

motion for judgment on the pleadings (Dkt. No. 21), and on July 25, 2018, he filed a motion for injunctive relief (Dkt. No. 26).

On August 1, 2018, Defendants' and Plaintiff's motions were referred to the undersigned for report and recommendation (Dkt. No. 27). *See* 28 U.S.C. § 636(b)(1). The court heard argument on the motions on September 13, 2018, and took the matter under advisement (Dkt. No. 30). For the reasons set forth below, the undersigned recommends that Defendants' motion to dismiss be allowed in part and that the remaining claims in the case be dismissed without prejudice. If the recommendation with respect to dismissal of Plaintiff's remaining claims is not adopted, the undersigned recommends that Plaintiff's motions be denied.

II.   BACKGROUND

This case is the second filed in this court between Plaintiff and Defendants (excluding LPJ Donuts). The earlier suit has some relevance to Defendants' arguments in support of dismissing the current one, so the court will review events in the first case as background.

A.   The 2016 Lawsuit

On May 26, 2016, O'Connell Oil Associates filed suit against Plaintiff and his company, Whiting Farms Convenience Stores, Inc. (WFCS), alleging breach of contract and seeking declaratory, preliminary, and permanent injunctive relief arising from the parties' franchise relationship. *O'Connell Oil Assocs., Inc. v. Whiting Farm Convenience Stores, Inc.*, No. 3:16-cv-30083 (D. Mass. filed May 26, 2016). The action, which O'Connell Oil Associates dubbed the "Termination Action," alleged that WFCS and Plaintiff owed over $1.6 million in overdue payments, rent, and loan payments arising from the Motor Fuel Station Lease and Dealer Agreement between the two parties. O'Connell Oil Associates issued a Notice of Franchise Termination to WFCS and Plaintiff. Plaintiff refused to vacate the premises.

The parties reached a partial settlement agreement, which was acknowledged by Plaintiff in court on July 12, 2016, in a colloquy before presiding District Judge Mark G. Mastroianni. The settlement agreement only resolved the issue of possession of the premises. The parties reserved their rights on all other claims and defenses. By the terms of the partial settlement, parts of which the parties put on the record at the hearing before Judge Mastroianni, WFCS and Plaintiff were to relinquish possession of the disputed property to O'Connell Oil Associates by August 15, 2016 (Dkt. No. 16-1 at 5-7). So far as appears from the record, Plaintiff and WFCS complied with this aspect of the settlement agreement.

On May 26, 2017, O'Connell Oil Associates moved to dismiss the first matter without prejudice (Dkt. No. 69). The court granted the motion (Dkt. No. 75), and the Termination Action was closed on June 16, 2017.

B.      The Current Action

Plaintiff filed this complaint on September 15, 2017 (Dkt. No. 1). He alleged federal question jurisdiction pursuant to the PMPA. His statement of claims comprises four paragraphs. Plaintiff alleges that he entered into a franchise agreement with O'Connell Oil Associates at some unspecified date prior to 2007 (Compl. ¶¶ 1, 2). In 2011, after several years of planning and investment in renovations to the location, a Dunkin Donuts with a drive through window opened on the premises (Compl. ¶ 2). In 2012, Plaintiff entered into an agreement with Gaudrault that he would receive income related to the Dunkin Donuts project for a period of thirty years (*id.*). Plaintiff received income from this business and paid electric bills and other expenses related to the Dunkin Donuts business (*id.*).

On January 2, 2016, O'Connell Oil Associates entered into an agreement with Global Montello Group Corp. by which O'Connell Oil Associates sold Plaintiff's franchise to Global

Montello Group as part of a twenty-seven station deal (Compl. ¶ 1).  On January 20, 2016, Gaudrault notified Plaintiff of the sale of the franchise (*id.*).  Plaintiff alleges that Gaudrault made Plaintiff promises and "offers of settlement" about possible lease extensions or employment opportunities with Global Montello Group (Compl. ¶ 3).  Gaudrault purportedly scheduled a meeting with Plaintiff and Global Montello Group for March 9, 2016 (*id.*). However, a few hours before the meeting was to begin, it was cancelled and never rescheduled (*id.*).  Later, Plaintiff learned that no such meeting had ever been scheduled (*id.*).  That same month, Plaintiff's monthly income from Dunkin Donuts stopped without notice (Compl. ¶ 2). Plaintiff alleges that he learned in August 2016 that "LPJ Donuts was also paying Michael Sobon for the entire renovation of the store and their portion of the electric bill and other expenditures" (*id.*).

According to Plaintiff, his franchise generated over $10 million in net income to O'Connell Oil Associates.  He had planned to sell his franchise to fund his retirement.  He asserts that his franchise was ended without notice and that none of the acceptable reasons for franchise termination set forth in the PMPA applied (Compl. ¶ 1).  He further alleges that Defendants used "excessive predatory practices" that resulted in financial hardship, severe depression, and anxiety to Plaintiff (Compl. ¶ 4).

III.   <u>DISCUSSION</u>

A.   <u>Defendants' Motion to Dismiss</u>

In reviewing a motion to dismiss under Rule 12(b)(6), the court must "accept as true all well-pleaded facts set out in the complaint and indulge all reasonable inferences in favor of the pleader." *S.E.C. v. Tambone*, 597 F.3d 436, 441 (1st Cir. 2010).  "While pro se litigants are not exempt from procedural rules, … courts hold pro se pleadings to less demanding standards than

4

those drafted by lawyers.  By the same token, courts endeavor, within reasonable limits, to guard against the loss of pro se claims due to technical defects." *Boivin v. Black*, 225 F.3d 36, 43 (1st Cir. 2000) (internal citations omitted).  Courts "are sensitive to the challenges that pro se plaintiffs face in pleadings and do not condemn inexperienced plaintiffs to be forever bound by their clerical errors and minor factual slip-ups." *Newman v. Lehman Bros. Holdings Inc.*, 901 F.3d 19, 27 (1st Cir. 2018).  Dismissal is appropriate "'only if the plaintiff's factual averments hold out no hope of recovery on any theory'" reasonably discernable in the complaint.  *Rodi v. S. New England Sch. Of Law*, 389 F.3d 5, 13 (1st Cir. 2004) (quoting *In re Colonial Mort. Bankers Corp.*, 324 F.3d 12, 15 (1st Cir. 2003)).

Three claims are reasonably discernable in Plaintiff's complaint: (1) a PMPA claim against Defendants for termination of the franchise; (2) either a common law breach of contract claim or a tort claim for misrepresentation against O'Connell Oil Associates and Gaudrault based on the alleged offers to Plaintiff of continued employment or of a lease extension; and (3) a common law breach of contract claim against one or more of the defendants for the termination of monthly payments from the Dunkin Donut business.  Because Defendants assert that the first and second claims fall under the purview of the PMPA, a brief review of the statute is warranted.

"Enacted in 1978, the PMPA was a response to widespread concern over increasing numbers of allegedly unfair franchise terminations and nonrenewals in the petroleum industry." *Mac's Shell Serv., Inc. v. Shell Oil Prods. Co. LLC*, 559 U.S. 175, 178 (2010).  "PMPA is a conventional dealer-protection statute limiting the circumstances in which a motor fuel franchisor can terminate or choose not to renew a franchise relationship." *Santiago-Sepúlveda v. Esso Standard Oil Co. (P.R.)*, 643 F.3d 1, 4 (1st Cir. 2011).

The Act establishes minimum federal standards governing the termination and nonrenewal of petroleum franchises. Under the Act's operative provisions, a franchisor

> may "terminate" a "franchise" during the term stated in the franchise agreement and may "fail to renew" a "franchise relationship" at the conclusion of that term only if the franchisor provides written notice and takes the action in question for a reason specifically recognized in the statute.

*Mac's Shell Serv., Inc.*, 559 U.S. at 178 (quoting 15 U.S.C. §§ 2802, 2804). "The general rule is that notice must be given at least 90 days before the nonrenewal takes effect. An exception to this general rule allows the franchisor to provide notice on the earliest, reasonably practicable date where the circumstances make a 90–day notice unreasonable." *Esso Standard Oil Co. (P.R.) v. Monroig-Zayas*, 445 F.3d 13, 16 (1st Cir. 2006) (citing 15 U.S.C. §§ 2804(a)(2), 2804(b)(1)).

.        Except where the "PMPA regulates termination and renewal and so bars inconsistent state law, state law is not superceded." *Santiago-Sepúlveda*, 643 F.3d at 7. "Congress left undisturbed state-law regulation of other types of disputes between petroleum franchisors and franchisees." *Mac's Shell Serv., Inc.*, 559 U.S. at 186 (citing 15 U.S.C. § 2806(a)). Thus, franchisees can still "bring private suits in state court to invalidate franchise provisions that are inconsistent with state law," *Santiago-Sepúlveda*, 643 F.3d at 7, or "to address wrongful franchisor conduct that does not have the effect of ending the franchise." *Mac's Shell Serv., Inc.*, 559 U.S. at 188. "The Act pre-empts only those state or local laws that govern the termination of petroleum franchises or the nonrenewal of petroleum franchise relationships." *Id.* (citing 15 U.S.C. § 2806(a)).

        "To enforce [the PMPA's] provisions, a franchisee may bring suit in federal court against any franchisor that fails to comply with the Act's restrictions on terminations and nonrenewals." *Id.* at 179. The PMPA provides a one-year limitations period. 15 U.S.C. § 2805(a). *See Mac's Shell Serv., Inc.*, 559 U.S. at 189. "Under the PMPA, an action for wrongful termination must be filed within a year after the later of (1) the date of termination or (2) the date the franchisor fails

6

to comply with the termination provisions of Section 2802." *Johnson v. Amoco Oil Co.*, 790 F. Supp. 335, 338 (D.D.C. 1992) (citing 15 U.S.C. § 2805(a)).

Defendants' first contention is that Plaintiff's claims that are premised on the PMPA fall outside the statute of limitations and should be dismissed for this reason. This court agrees. Plaintiff alleges that, on January 20, 2016, Defendants notified him of the sale of the franchise. There is a strong argument that January 20, 2016 is the termination date, *Mac's Shell Serv., Inc.*, 559 U.S. at 189 ("A franchisee that receives notice of termination 'has been terminated' within the meaning of § 2805(b)(2)(A)(i), even though the termination 'takes effect' on a later date ...."), in which case Plaintiff would have had to have filed his complaint by January 20, 2017. Plaintiff did not surrender the premises of the franchise to O'Connell Oil Associates until August 15, 2016. Accepting the more Plaintiff-friendly date of August 15, 2016, as the termination date, Plaintiff still filed his complaint a month outside of the one-year statute of limitations because he did not file his complaint until September 15, 2017 (Dkt. No. 1). *See* 15 U.S.C. § 2805(a).

Although Plaintiff has not explicitly argued the point, the court notes that there is no basis for the application of equitable tolling. Plaintiff has alleged that "masterful manipulation by the wealthy big-business defendants" caused his loss (Compl. ¶ 4). "However, for the doctrine of equitable tolling to apply, there must be both fraudulent concealment on the part of defendant and reasonable diligence on the part of plaintiff to discover his claim." *Johnson*, 790 F. Supp. at 338. Silence on the part of a defendant is not enough to show fraudulent concealment. *Id.* Here, Plaintiff alleges that he was notified that O'Connell Oil Associates had sold his franchise to Global Montello Group on January 27, 2016 (Compl. ¶ 1). There was no fraudulent concealment justifying an extension of the statute of limitations to September 15, 2017. For these reasons, the

undersigned recommends that Plaintiff's claim that his franchise was terminated in violation of the PMPA be dismissed with prejudice.

Defendants further argue that the PMPA preempts the second of Plaintiff's claims, in which Plaintiff seeks to hold Defendants liable for promises or offers of a lease extension or of employment under either a contract or tort theory. Defendants argue that Plaintiff's claim that employment or lease extension promises were made to him by Defendants as "a business manipulation to obtain possession of [the] franchise" cannot proceed as state common law claims (Compl. ¶ 4). In the court's view, this contention is only partially correct.

> In the PMPA, Congress expressly set out the preemptive scope of that legislation: it stated that no state or local entity could adopt any provision regarding the termination or nonrenewal of franchises, or regarding the notification required for termination or nonrenewal, unless such a provision was the same as that of the PMPA. Thus, the only grounds on which a franchisor can terminate or not renew a franchise, and the only grounds on which a franchisee can contest the termination or nonrenewal of a franchise would be those set out by the PMPA.

*Esso Standard Oil Co. v. Dep't of Consumer Affairs*, 793 F.2d 431, 434 (1st Cir. 1986) (citing 15 U.S.C. § 2806)). To the extent that Plaintiff seeks to pursue a claim under state law that his franchise was terminated based on unfair and deceptive negotiations he had with Defendants prior to termination of the franchise, those claims are preempted by the PMPA, and, as is set forth above, were not timely filed. *See Smoot v. Mobil Oil Corp.*, 722 F. Supp. 849, 858-59 (D. Mass. 1989) (holding that the PMPA preempted any claims under Mass. Gen. Laws ch. 93A that might "make it an unfair practice for a franchisor to negotiate with a potential business successor franchisee before the existing franchisee is terminated"). Thus, this court recommends dismissal with prejudice of so much of Plaintiff's second claim as alleges that he is entitled to damages for the unfair and deceptive termination of his franchise.

Plaintiff, however, also appears to allege that he was promised employment or a settlement payment of some kind and that these promises were not honored. A promise of employment or settlement is not a promise about the termination or nonrenewal of a franchise and claims based on such a promise or promises, even if made in the context of negotiations about the termination of a franchise, would not necessarily be preempted by the PMPA. *See Mac's Shell Serv., Inc.*, 559 at 188. Plaintiff does not appear to allege that these promises were contingent on his agreement to the termination of his franchise. While these claims are vaguely pled and their possible basis under state law is not spelled out, in view of Plaintiff's pro se status, the court does not recommend dismissal of this claim or claims with prejudice.

Finally, Defendants argue that Plaintiff's remaining state law breach of contract claim for the termination of monthly payments from the Dunkin Donuts operation does not comply with Federal Rule of Civil Procedure 8(a) and should be dismissed for this reason. Rule 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). There must be sufficient factual allegations to give rise to a plausible claim for relief. *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 53 (1st Cir. 2013). Additionally, the "short and plain" statement must provide "sufficient detail … to give a defendant fair notice of the claim and the grounds upon which it rests." *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 8 (1st Cir. 2011).

While Plaintiff's allegations concerning an agreement about the income generated by the Dunkin Donuts operation are somewhat imprecise, they are sufficient to meet the Rule 8 pleading standard, which is the only basis advanced by Defendants for their dismissal. Plaintiff alleges that he paid for renovations to the franchise location to permit a drive-through Dunkin Donuts to open and paid operating expenses for the business; that, pursuant to an agreement with

Gaudrault, he began receiving income based on the Dunkin Donuts operation in January 2011; that the agreement he made with Gaudrault about payments for the Dunkin Donuts operation had a thirty-year term; and that payments under Plaintiff's agreement with Gaudrault ceased in March 2016 in violation of the agreement (Compl. ¶ 2). These allegations are sufficient to provide Defendants "fair notice of the claim and the grounds upon which it rests." *Ocasio-Hernández*, 640 F.3d at 8. Accordingly, the court does not recommend dismissal of the claims for failure to comply with Rule 8(a).

This Report and Recommendation recommends dismissal of all of Plaintiff's PMPA claims, which are the only federal claims reasonably discernable in the complaint. *See Rodi*, 389 F.3d at 13. "When any and all federal claims have been dismissed prior to trial, 'the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity' often will counsel in favor of declining jurisdiction over any remaining state-law claim." *Lawless v. Steward Health Care Sys., LLC*, 894 F.3d 9, 20 (1st Cir. 2018) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). In accord with that guidance, the First Circuit has "held that, when all federal claims have been dismissed, it is an abuse of discretion for a district court to retain jurisdiction over the remaining pendent state law claims unless doing so would serve 'the interests of fairness, judicial economy, convenience, and comity.'" *Wilber v. Curtis*, 872 F.3d 15, 23 (1st Cir. 2017) (quoting *Desjardins v. Willard*, 777 F.3d 43, 45-46 (1st Cir. 2015) (citation omitted)). On the basis of this authority, the undersigned recommends that the court decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims, dismissing those claims without prejudice to their refiling in state court, and that the case be closed on the court's docket. So far as the court is aware, there has been no discovery conducted in this case and there is no schedule for further proceedings. While

it is apparent that Plaintiff has suffered financially, the interests of fairness, judicial economy, convenience, and comity do not counsel retaining jurisdiction over tenuously pled state law claims.

B.      Plaintiff's Motion for Judgment on the Pleadings and
        Motion for Injunctive Relief

If the court's recommendation regarding the disposition of Defendants' motion to dismiss is adopted, the court need not rule on Plaintiff's pending motions for judgment on the pleadings and for injunctive relief.  In the event that the court's recommendations set forth above are not adopted, in part or in whole, the court recommends that Plaintiff's motions be denied for the reasons set forth below.

A motion for judgment on the pleadings pursuant to Rule 12(c) may be granted when, after viewing the "facts contained in the pleadings in the light most favorable to the nonmovant and drawing all reasonable inference therefrom in the nonmovant's behoof," it is clear that the movant is entitled to prevail.  *R.G. Fin. Corp. v. Vergara-Nuñez*, 446 F.3d 178, 182 (1st Cir. 2006); *Kando v. R.I. State Bd. of Elections*, 880 F.3d 53, 58 (1st Cir. 2018) ("Judgment on the pleadings should be allowed only if the properly considered facts conclusively establish that the movant is entitled to the relief sought.").  A motion for preliminary injunction may be granted if the plaintiff can show (1) a likelihood of success on the merits, (2) he would suffer irreparable harm were the injunction not granted, (3) the balance of equities is in his favor, and (4) no great harm to the public interest.  *Jean v. Mass. State Police*, 492 F.3d 24, 26-27 (1st Cir. 2007).  "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a *clear showing*, carries the burden of persuasion."  *Bear Republic Brewing Co. v. Central City Brewing Co.*, 716 F. Supp. 2d 134, 139 (D. Mass. 2010) (emphasis in original; citations omitted).  If Plaintiff cannot satisfy the first factor required to obtain a

preliminary injunction – success on the merits – he logically cannot meet his burden for obtaining a judgment on the pleadings.

Plaintiff's complaint does not clearly spell out legal justifications for the relief he seeks. It appears, however, that his motion for a preliminary injunction seeks an order from the court requiring Defendants to resume monthly payments to Plaintiff related to Dunkin Donuts operations on the premises of the convenience store he used to operate and to remit $145,000.00 in past due amounts (Dkt. No. 26). This claim sounds in contract or states a reliance theory of damages. *Cf. Fecteau Benefits Grp., Inc. v. Knox*, 890 N.E.2d 138, 143 (Mass. App. 2008) (stating that "a wronged party is entitled to receive the benefit of the bargain," or alternatively, a wronged party may "recover restitution damages, that is, an amount corresponding to any benefit conferred by the plaintiff upon the defendant in performance of the contract disrupted by the defendant's breach" (internal quotations omitted)).

Because Plaintiff asks the court to order payment to him from Defendants, he seeks "a mandatory preliminary injunction, which requires affirmative action by the non-moving party in advance of trial …. Because a mandatory preliminary injunction alters rather than preserves the status quo, it 'normally should be granted only in those circumstances when the exigencies of the situation demand such relief.'" *Braintree Labs., Inc. v. Citigroup Glob. Mkts. Inc.*, 622 F.3d 36, 40–41 (1st Cir. 2010) (quoting *Mass. Coal. of Citizens with Disabilities v. Civil Def. Agency*, 649 F.2d 71, 76 n.7 (1st Cir.1981)). "Where an adequate remedy at law is available, however, injunctions are routinely denied. … [A] need for liquidity is not irreparable harm." *Braintree Labs., Inc. v. Citigroup Glob. Mkts., Inc.*, 671 F. Supp. 2d 202, 208 (D. Mass. 2009), *aff'd in part, appeal dismissed in part*, 622 F.3d 36 (1st Cir. 2010). Plaintiff plainly alleges that he has suffered severe financial harm from the termination of the franchise agreement and loss of his

business.  But irreparable harm is defined as a substantial injury that is not accurately measurable or adequately compensable by money damages.  *See Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 217 F.3d 8, 13 (1st Cir. 2000).  There is no evidence that Defendants "cannot pay damages and thus provide an adequate remedy at law."  *Braintree Labs., Inc.*, 671 F. Supp. 2d at 208 ("Prejudgment interest … compensates for any loss of use of money").  Where the remedy of money damages is available if Plaintiff prevails on his claims in the usual course of litigation, it is generally held that a plaintiff has not sufficiently shown that he will suffer irreparable harm if an injunction does not to issue.

More importantly, notwithstanding the financial harm Plaintiff has suffered, he is not entitled to injunctive relief because a likelihood of success on the merits is the "critical" factor, *Weaver v. Henderson*, 984 F.2d 11, 12 (1st Cir. 1993), and the allegations in Plaintiff's complaint are insufficient for the court to conclude that he has a likelihood of success on the merits.  It is undoubtedly difficult for self-represented plaintiffs to navigate the litigation process and satisfy their legal burdens.  Even under a generous standard, however, there is not enough before the court to find that Plaintiff is likely to succeed on the merits of his state law claims.  "It is axiomatic that to create an enforceable contract, there must be agreement between the parties on the material terms of that contract, and the parties must have a present intention to be bound by that agreement."  *Situation Mgmt. Sys., Inc. v. Malouf, Inc.*, 724 N.E.2d 699, 703 (Mass. 2000).  Plaintiff alleges oral agreements, the terms of which he has not spelled out.  Given the chance to present his arguments, or any additional allegations or evidence, in support of his motions during oral argument before the court, Plaintiff provided no greater insight into his claims than what was offered in his complaint.  He has not alleged that he had a written agreement promising him income from the Dunkin Donuts operation for thirty years.  It is as

13

likely that he was entitled to such income only so long as he operated the convenience store, or, given that he alleges someone else was also receiving payment, that he was not entitled to the income at all. Without more, the court cannot find that Plaintiff has shown a reasonable likelihood of success on the merits of his claim. Nor can the court find that he has shown a likelihood of success on the merits of claims related to promises of employment or settlement when he has not set forth facts from which it could be concluded that the parties reached an oral agreement on either of these subjects or what the terms of any such agreement(s) were. For the foregoing reasons, this court recommends that Plaintiff's motion for a preliminary injunction be denied.

Just as Plaintiff has not shown a likelihood of success on the merits in connection with his motion for preliminary injunctive relief, he has not shown that he is entitled to judgment on the pleadings. For reasons set forth above, it is not clear, viewing the facts in the light most favorable to the nonmovant, that Plaintiff is entitled to relief on his state law claims. *R.G. Fin. Corp.*, 446 F.3d at 182. Moreover, Plaintiff's motion for judgment on the pleadings is untimely. Rule 12 "permits a party to move for judgment on the pleadings at any time '[a]fter the pleadings are closed,' as long as the motion does not delay the trial. In the archetypical case, the fate of such a motion will depend upon whether the pleadings, taken as a whole, reveal any potential dispute about one or more of the material facts." *Gulf Coast Bank & Tr. Co. v. Reder*, 355 F.3d 35, 37-38 (1st Cir. 2004) (citing Fed. R. Civ. P. 12(c)). Plaintiff filed this motion while Defendants' motion to dismiss was still pending. Accordingly, Defendants have not yet answered Plaintiff's complaint, and the pleadings cannot be considered closed. If the court rules substantively on Plaintiff's motion for judgment on the pleadings, this court recommends that the motion be denied.

IV.    CONCLUSION

For the foregoing reasons, the undersigned recommends that Defendants' Motion to Dismiss (Dkt. No. 15) be allowed in part as to Plaintiff's claims under the PMPA.  Further, the undersigned recommends that the court decline to exercise supplemental jurisdiction over the remaining state law claims and dismiss the case without prejudice as to all remaining claims, not acting on Plaintiff's pending motions.  If the recommendation to decline supplemental jurisdiction is not adopted, in the alternative the court recommends that Plaintiff's motions be denied (Dkt. Nos. 21 & 26).[1]

/s/ Katherine A. Robertson
KATHERINE A. ROBERTSON
United States Magistrate Judge

DATED:  January 25, 2019

---

[1] The parties are advised that under the provisions of Fed. R. Civ. P. 72(b) or Fed. R. Crim. P. 59(b), any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court within fourteen (14) days of service of this Report and Recommendation.  The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection.  The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation.  *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-79 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980).  *See also Thomas v. Arn*, 474 U.S. 140, 154-55 (1985).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.